MURTY BROS. SALES, INC.; et
al., Movants,

v.

William J. PRESTON; et al.,
Respondents.

Supreme Court of Kentucky.

Aug. 7, 1986.

As Corrected Aug. 7, 1986.

Rehearing Denied Oct. 16, 1986.

Dandridge Walton, Sam G. McNamara,
Barnett & Alazia, Frankfort, for movants.

Phillip D. Scott, Schuyler J. Olt, Steven
L. Spalding, Lexington, for respondents.

LEIBSON, Justice.

This case arises from a Joint Venture
Agreement. The purpose of the Venture
according to the Agreement was to "ac-
quire, own, train, maintain, race, breed and
otherwise deal with and dispose of" thor-
oughbred horses. One party, Preston
Farms, primarily supplied the necessary
capital contributions and the second party,
Murty Brothers, primarily managed the
Venture and the assets thereof.

The continued existence of the Venture
was scheduled to terminate June 30, 1985.
However, the Agreement also provided un-
der the section designated "Dissolution and

Liquidation" that if either party withdrew from the Venture before its termination by failing to contribute as required by the Agreement, the nondefaulting party had the option to take possession and control of the business and the assets and continue the Venture, at least for five years. The provision for continuation includes:

"[T]he withdrawing or defaulting Venturer shall be entitled to receive in five equal annual installments of cash an amount equal to the cash that would otherwise have been distributable to such Venturer under this Agreement if all of the assets of the Joint Venture had been sold at the time of such default or withdrawal...."

Both parties claimed in their pleadings that the other defaulted, and each demanded control of the partnership property. On May 15, 1985, one and a half months before the Agreement would have terminated by its terms, Murty Brothers served a written notice on Preston Farms charging that the latter had wrongfully withdrawn from the Venture and that it was exercising its option to continue the business. Murty Brothers continued to demand the right to do so in this lawsuit.

On the other hand, Preston Farms alleged that due to Murty Brothers' breach it was entitled to a decree dissolving the partnership, and, further, Preston Farms sought an order to permit Preston Farms to proceed with a sale of the Venture's assets at public auction. On August 29, 1985, the trial court entered an Order of Sale authorizing Preston Farms to take possession and sell the partnership assets, "accounting to the Court relative to the sales results." This included the sale of valuable thoroughbred horses in training, mares, foals and yearlings.

Murty Brothers appealed from this Order of Sale. Murty Brothers contends that the "only" real issue in the lawsuit is the right to continue on with the business, meaning to continue raising and training the horses until they can be sold at optimum benefit, and that, therefore, the trial court's order of sale was effectively a final order because it deprives the fundamental issue of practical significance.

Preston Farms claims that the ongoing expense of keeping these horses made the trial court's order appropriate, and that selling off the horses and substituting their present value in dollars creates a fund which later can be used to continue the business if it should be decided that Murty Brothers had the right to do so under the Joint Venture Agreement. Preston Farms contends that this Order of Sale was an interlocutory, nonappealable order.

The trial court has never decided whether Murty Brothers had a right to continue on with the business, raising and training the horses, before ordering the sale. However, the Court of Appeals has. In a single judge order "denying CR 76.33 relief," the Court of Appeals stated it "failes (sic) to perceive that any dissolution of the parties' agreement occurred prior to June 30, 1985," on which date "the partnership proceeded to dissolve and terminate by operation of law." This Court of Appeals' order decides that the Agreement "did not carry with it a right to continue the partnership business."

Thereafter, the Court of Appeals dismissed the appeal, holding that the "order of the Woodford Circuit Court is not a final and appealable order." This Motion for Discretionary Review followed. For reasons that follow, we reverse.

The August 29, 1985 order compels a sale of the assets of the Venture, and thus deprives the Murtys of the ability to continue it, without first determining the validity of the Murtys' underlying claims. CR 54.01 provides in pertinent part:

"A final or appealable judgment is a final order adjudicating all the rights of all the parties in an action or proceeding.... Where the *context requires*, the term 'judgment' as used in these rules shall be construed 'final judgment' or 'final order.'" (Emphasis added).

Thus, we are called upon to consider whether this is a situation where the "context requires" that the trial court's order

shall be treated as a final judgment or final order.

In general, those cases in which we have decided that an order of sale is a final order have occurred in the context of a mortgage foreclosure wherein the order of sale leaves nothing before the court but the necessity thereafter to perform a purely administrative act, the entry of the report of sale and the disbursement of proceeds. *Elam v. Acme Well Drilling Co.*, Ky., 411 S.W.2d 468 (1967). However, in appropriate circumstances an order of sale, even if it does not determine the validity or the priority of claims against the property sold, may be considered a final and appealable order. *Alexander v. Springfield Production Credit Assn.*, Ky.App., 673 S.W.2d 741 (1984).

In *Alexander*, in a situation somewhat analogous to the present case, the Court of Appeals noted the impropriety of an order of sale "inasmuch as the validity and priority of the claims against the land had not yet been determined." The Court went on to explain:

> "It appears ... there exists a substantial issue as to the Alexander's liability ... and ... to the validity of the Alexander's mortgage lien upon the property.... [I]f the mortgage is determined to be invalid ... it may render the sale unnecessary or, at least, it may substantially alter the position of other lien holders.... [W]e call attention to the general rule that such a determination should be made before sale." 673 S.W.2d at 743.

The distinction between interlocutory and final orders cannot be premised merely on the basis of whether the order authorizes a sale of various assets. The key to deciding whether the present order was subject to appeal is found in the language of an old case, *Maysville & Lexington R.R. Co. v. Punnett*, 15 B.Mon. 47, 54 Ky. 47 (1854), wherein our Court includes within the definition of a final, appealable order one which "operates to divest some right in such a manner as to put it out of the power of the court making the order ... to place the parties in their original condition."

Thus, in the context of this case, the answer to the question presented depends upon whether the property which the trial court ordered sold should be classified as ordinary property of a kind subject to replacement by new horses purchased with the proceeds of the sale, or whether such property should be considered as unique property which should be delivered *in specie* to the Murty Brothers should they prevail on their claim that under the Joint Venture Agreement and the facts of this case they were entitled to take possession of the property and continue the operation of the Venture.

The answer to this question is self-evident. If the Murtys are correct in their contention that they had a right to continue with the business, the purchase of new horses with the proceeds of the sale would not satisfy the terms of the obligation. Thoroughbred race horses are not fungibles. They are *unique* property, the future value of which depends upon an infinite variety of future factors, not the least of which are directly related to the way in which the Murty Brothers might perform those functions itemized under the "purposes of the Joint Venture" as:

> "[T]o acquire, own, train, maintain, race, breed and otherwise deal with and dispose of the Horses in accordance with this Agreement. The Joint Venture shall have all the powers necessary or convenient to carry out its purposes."

The trial court erred in ordering the sale before determining whether under the facts to be proved in this case and the terms of the Joint Venture Agreement the Murty Brothers had authority to continue the Venture. The Court of Appeals' Opinion in response to the CR 76.33 motion (there was no further explanation provided in its Order of Dismissal) implicitly conceded this fundamental error, because it determined that the actions and activities in this case were not such as to give either party the right to continue the partnership.

The Court of Appeals decided that the Agreement terminated on June 30, 1985, pursuant to its own terms. Thus the Court of Appeals decided this preliminary question, which the trial court had not yet decided.

█ If this Court of Appeals' decision was correct, the trial court's August 29, 1985 order of sale would also be correct. However, it was error for the Court of Appeals to undertake to decide this issue, which was fundamental to the merits of the case. This is a decision which must be made at the trial level considering both the evidence regarding withdrawal or breach and the terms of the Joint Venture Agreement.

Preston Farms claims in its Brief that "the continued operation of the Joint Venture does not depend on the ownership of certain specific thoroughbreds," and that, if the Murty Brothers are correct, "ultimately" they will be "entitled to the assets of the Joint Venture through a judgment, and [can utilize] those assets to continue the business of the Joint Venture." But, the Agreement covers more than just buying and selling horses. The language of the Agreement covers raising, training and racing horses as well as acquiring and disposing.

Once the horses are disposed of, it is impossible to make a decision as to what amount of cash would cover their future value after raising, training and racing. For this reason the trial court erred in entering an order of sale before determining the underlying issue raised by the Murtys, which was whether they had a right to continue to operate the business and thus enhance the value of the horses.

The decision of the Court of Appeals is reversed. The trial court's order of sale of August 29, 1985 is set aside, and the within case is remanded to the trial court for further proceedings consistent with this Opinion. Whatever property of the Joint Venture remains unsold as of the date of this decision shall not be sold pending a final decision on the merits.

STEPHENS, C.J., and GANT and WHITE, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which VANCE and WINTERSHEIMER, JJ., join.

STEPHENSON, Justice, dissenting.

The sole issue presented on this appeal is whether the order of sale entered by the trial court is a final and appealable order. The majority opinion decides the issue affirmatively and then proceeds to decide the matter on its merits.

I agree that an order of sale can be a final and appealable order. Whether or not it is justified depends on the circumstances of the case. The Court of Appeals order dismissed the appeal; the majority opinion of this court not only finds the dismissal in error, but decides the case by setting aside the order of sale. The horses have been sold; a bond had been posted by Preston. Even though horses may be *unique*, the bond is sufficient to cover any loss should Murty prevail.

We should confine ourselves to the issue on appeal and remand the case to the Court of Appeals for a decision on the merits, which have not been argued here or there.

Accordingly, I dissent.

VANCE and WINTERSHEIMER, JJ., join in this dissent.